Katherine C. GAY and Charles E. GAY, Her
Husband *v.* Dr. Nancy A. RABON

83-65                                                    652 S.W.2d 836

Supreme Court of Arkansas
Opinion delivered June 27, 1983
[Rehearing denied July 18, 1983.*]

*Purtle, J., would grant rehearing.

6

*Marsha C. Woodruff* of *Pearson, Woodruff & Evans,* for appellants.

*Walter B. Cox,* of *Davis, Cox & Wright,* for appellee.

FRANK HOLT, Justice. On September 24, 1979, the appellee inserted an intrauterine device (IUD) into the uterine cavity of appellant Katherine Gay, which allegedly was done in a negligent manner causing her to suffer pain and requiring eventual removal of the device by surgery. On September 4, 1981, the appellants filed a complaint in circuit court alleging medical malpractice in connection with the insertion of the IUD and seeking compensatory damages. On September 25, the appellee answered, denying the allegations of negligence, and affirmatively asserting, which is admitted, that the appellants had failed to comply with the 60 day notice of intent to sue as required by Ark. Stat. Ann. § 34-2617 (Supp. 1981), thereby allowing the two year statute of limitations to expire. Ark. Stat. Ann. § 34-2616 (Supp. 1981). The appellants responded that § 34-2617, requiring notice to sue, is constitutionally invalid. The trial court held it valid and granted appellee's motion for summary judgment based on the expiration of the statute of limitations. Hence this appeal.

The appellants contend that the Arkansas Medical Malpractice Act, Act 709 of 1979 (Ark. Stat. Ann. §§ 34-2613 et seq. [Supp. 1981]), is unconstitutional in its entirety because it denies equal protection of the laws to victims of medical malpractice, it constitutes special legislation, and because it denies or delays a remedy to medical malpractice victims. They assert that the Medical Malpractice Act

violates the Fourteenth Amendment to the Constitution of the United States, as well as Art. 2 § 3; Art. 2, § 18; Art. 2, § 13; and Amendment 14 to the Constitution of Arkansas (1874). In addition to the notice of intent to sue provision, the Medical Malpractice Act contains provisions relating to the burden of proof, expert testimony, the elimination of the *ad damnum* clause from the complaint, and limitations on damages recoverable, all of which are attacked by the appellants. However, we will consider only appellants' challenge to § 34-2617, the notice of intent to sue provision. That provision is the only challenged portion of the Medical Malpractice Act that has been applied to their detriment. Accordingly, the appellants have standing to challenge only § 34-2617. *Sweeney* v. *Sweeney,* 267 Ark. 595, 593 S.W.2d 21 (1980); *Carter & Burkhead* v. *State,* 255 Ark. 225, 500 S.W.2d 368 (1973); and *Lienhart* v. *Bruton,* 207 Ark. 536, 181 S.W.2d 468 (1944). It is well settled that no constitutional issues are decided except those necessary to a decision in the specific case at hand. *Winston* v. *Personal Finance Company of Pine Bluff, Inc.,* 220 Ark. 580, 249 S.W.2d 315 (1952). The narrow issue decided today is whether the notice requirement of § 34-2617 is constitutional.

Ark. Stat. Ann. § 34-2617 (Supp. 1981) provides as follows:

No action for medical injury shall be commenced until at least sixty (60) days after service upon the person or persons alleged to be liable, by certified or registered mail to the last known address of the person or persons allegedly liable, of a written notice of the alleged injuries and the damages claimed. If the notice is served within sixty (60) days of the expiration of the period for bringing suit described in Section 4 [§ 34-2617], the time for commencement of the action shall be extended seventy (70) days from the service of the notice.

The purpose of the act is reflected by the emergency clause.

It is hereby found, determined and declared by the General Assembly that the threats of legal actions for

medical injury have resulted in increased rates for malpractice insurance which in turn causes and contributes to an increase in health care costs placing a heavy burden on those who can least afford such increases and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and others which otherwise would not be considered necessary and that this Act should be given effect immediately to help control the spiraling cost of health care.

The appellants argue that the notice requirement of the act bears no reasonable relationship to the purpose of the legislation and gives the health care provider here special privileges and immunities not accorded to other tortfeasors. In *Carter* v. *Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), we were presented with a similar constitutional challenge. It was asserted that Ark. Stat. Ann. §§ 37-237 et seq. (Supp. 1981) (4 year statute of limitations) violated due process, equal protection, and the prohibition against special and local legislation. As we stated there, the question was whether the legislative action is arbitrary and capricious in granting a protection (4 year statute of limitations) to one class of tortfeasors, limiting actions for deficiencies in design, planning and supervision of construction of improvements to real estate, and not granting it to other tortfeasors such as materialmen and owners. We found no infringement upon the various constitutional provisions. The vital question is one of reasonableness. *Owen* v. *Wilson,* 260 Ark. 21, 537 S.W.2d 543 (1976). See also *Phillips* v. *Giddings,* 278 Ark. 368, 646 S.W.2d 1 (1983) and *Burt* v. *Ark. Livestock & Poultry Comm'n,* 278 Ark. 236, 644 S.W.2d 587 (1983). Here, it does not appear to us that the legislative action is arbitrary and capricious. We cannot say the legislature was in error when it determined that medical malpractice insurance rates were increasing and placing a heavy burden of medical expense on those who could least afford it. Furthermore, it appears that the requirement that a potential plaintiff send notice of his intent to sue at least sixty days in advance of filing the suit is reasonably related to the legislative goal of reducing medical malpractice insurance costs. The sixty day notice requirement makes it

possible for the insurance carrier and the potential defendant to attempt to arrive at a settlement with the aggrieved person without the necessity of the parties incurring the expense of litigation. The statute in question bears a fair and substantial relation to the object of the legislation, which is to encourage the resolution of claims without judicial proceedings, thereby reducing the cost of resolving claims and consequently the cost of insurance. Furthermore, the giving of notice is neither onerous nor difficult. A mere letter by certified or registered mail suffices. In fact, when notice is given within 60 days of the expiration of the two year statutory limit, the notice requirement benefits the plaintiff in that the limitation period is then extended by 70 days from the date of service of the notice. We do not perceive this notice requirement to be an unreasonable burden nor a delay of the remedy due a claimant. Neither do we consider it to be a trap for the unwary. The notice provision (§ 34-2617) follows immediately the section of the act which provides for a two year limitation (§ 34-2616). Thus, we cannot say that § 34-2617 is unreasonable.

There is a presumption of validity attending every consideration of a statute's constitutionality; every act carries a strong presumption of constitutionality; before it will be held unconstitutional the incompatibility between it and the constitution must be clear; and any doubt as to the validity must be resolved in favor of its constitutionality. *S. Cen. Dist., Pente. Costal Ch.* v. *Bruce-Rogers Co.,* 269 Ark. 130, 599 S.W.2d 702 (1980); *Carter & Burkhead* v. *State, supra; Williams* v. *State,* 253 Ark. 973, 490 S.W.2d 117 (1973); and *Davis* v. *Cox,* 268 Ark. 78, 593 S.W.2d 180 (1980). The heavy burden of demonstrating the unconstitutionality of a statute is upon the one attacking it. *Carter & Burkhead* v. *State, supra.* It is within the wisdom of the legislature to enact experimental and innovative legislation so long as there is a rational basis for doing so. Applying these well recognized rules as to statutory validity, we cannot say that the trial court erred in holding valid the notice provision of Act 709 of 1979, Ark. Stat. Ann. § 34-2617 (Supp. 1981).

We note that recent statutes providing special pretrial procedures in medical malpractice actions, such as the

mandatory requirement that a claim for medical malpractice be submitted to a review board before filing an action, have been enacted in a number of states and it appears that a majority of courts have upheld them. *Lacy* v. *Green,* 428 A.2d 1171 (Del. Super. 1981) and cases cited therein. Obviously, this precondition is more burdensome and delaying than the 60 day notice in issue here.

The appellants further contend that the legislature has no authority to decide procedural matters and that § 34-2617 is superseded by ARCP Rule 3. This issue was not presented to the trial court. Being raised for the first time on appeal, we do not consider it.

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The provision is arbitrary, a legal trap, and a procedural rule in conflict with this court's authority to decide procedural matters.

JOHN I. PURTLE, Justice, dissenting. I disagree particularly when the majority states, "We cannot say the legislature was in error when it determined that medical malpractice insurance rates were increasing and placing a heavy burden of medical expense on those who could least afford it." I think such a statement is completely unfounded and I have seen nothing which would change this impression.

The 60 day notice requirement of this act in no manner increases the potential for settling a claim. The same story could be used if a claimant were required to give notice 360 days in advance. The claims of no other tortfeasors are given this privilege. The record did not reflect that the cost of insurance was reduced, or that this act did, indeed, help control the spiraling cost of health care. The mere fact that a person can place MD or any other title after his name should not place him in a special category for the purpose of receiving more favorable treatment than any other person similarly situated.

I can find no rational basis for treating medical providers any differently than food providers or any other group. At the very least the appellant should have been allowed to go to trial on the allegations of the complaint. This legislation was enacted as a result of good lobbying and not because the poor are suffering. The majority states that this was experimental and innovative legislation. I would choose other words to describe it, two of which appear very prominently in Amendment 14 to the Arkansas Constitution, those being "special" and "local." I would reverse and remand.